GROSS, J.
The issue in this case is whether a 120-year-old Florida Supreme Court decision requires dismissal of a writ of garnishment served on the personal representative of an estate. Because of the changes to the garnishment statute and the probate code since 1883, we hold that the general rule announced in the decision is no longer operative and that the circuit court erred in dismissing the garnishment proceeding.
*549 On a complaint for civil theft, Edward Murray recovered a judgment against Paula Gambrill for $112,342.38, plus interest, costs, and attorney’s fees. Due to concerns that Gambrill might be secreting her assets, the judgment provided that execution and other post-judgment process could issue forthwith.
In a deposition in aid of execution, Murray learned that Gambrill’s husband, Glenn Gambrill, died in 1993, probate proceedings were pending in Broward County, and Gambrill was the personal representative of the estate and its primary beneficiary. In 2000, Gambrill realized over $52,000 in taxable income from the estate. Under her husband’s will, Gambrill inherited one-half of the adjusted gross estate; the remainder of the estate was placed in a trust, with Gambrill being entitled to all of its income.
Because he could not locate any assets upon which he could levy, Murray caused a writ of garnishment to be served on the estate. The estate moved to dismiss the writ. The motion identified Gambrill as “an income beneficiary to the estate” and its personal representative. The estate relied on Flanary v. Bailey, 591 So.2d 308 (Fla. 5th DCA 1991) to support its argument that the estate was exempt from garnishment.
The circuit court granted the estate’s motion and dismissed the writ of garnishment on January 7, 2002. The order observed that Murray had made no petition to the probate court allowing a garnishment. However, on January 3, 2002, Murray filed a motion with the probate court in Broward County seeking permission to proceed with the garnishment against the estate. On January 16, 2002, the probate judge granted the motion. Its order stated:
1-In this probate, the personal representative is the judgment debtor. Furthermore, the personal representative stands to take under the terms of the Decedent’s will. Finally, no claims have been filed against the Estate, and it appears that the only reason the Estate is being kept open at this point is to close the New York probate estate for this same Decedent (which was improperly opened in the first place because the Decedent died domiciled in the State of Florida). There is, therefore, no active administration with which the suggested proceedings would interfere.
[[Image here]]
3-Murray has agreed that any matters regarding the time of payment out of the Estate or distribution shall be left exclusively within the province of this Court, thereby obviating any concern which might otherwise exist about potential interference with the orderly administration of the Estate.
On January 16, Murray moved the circuit court to rehear the order dismissing the writ of garnishment, arguing that the concerns expressed in the order of dismissal had been fully addressed by the probate court. At the hearing on the motion, Murray’s attorney disclosed Gam-brill’s recent deposition testimony, which revealed that shortly after the original judgment issued, Gambrill wire-transferred $1,073,000.00 out of an estate account at Fleet Bank in Rochester, New York, to an account held at Barclay’s Bank in Nassau, Bahamas in the name of “Blue Whale Investment Limited.” Following the hearing, the trial court denied the motion to vacate the order dismissing the writ of garnishment.
To support the circuit court’s order, Gambrill relies upon Flanary. That case reversed a final judgment in garnishment, citing to the “general rule that an executor could not be charged as garnishee with respect to a pecuniary legacy bequeathed *550 by his testator, unless expressly provided by statute.” 591 So.2d at 309.
For its holding, Flanary relied primarily upon Post v. Love, 19 Fla. 634 (1883). Post held that an executor could not “be held to answer to a writ of garnishment at the instance of a creditor of a legatee.” Id. at 639. The supreme court explained the rationale for its holding:
Whether a legacy can be paid in whole or in part will depend upon the condition of the estate upon a final accounting in the Probate Court. Garnishment of legacies during the progress of the regular and usual course of administration and before the condition of the estate is ascertained, would be productive of great confusion and expense.
Id. at 642. The supreme court observed that to allow garnishment of an executor of an estate would require “a prescription of methods of procedure not now recognized in the courts of law.” Id. at 641.
In part, Post was based on the wording of the garnishment statute in effect in 1883. Chapter 43, section 1, Laws of Florida (1845) provided:
Every person who shall have brought a suit in any court of this State against any person, natural or corporate, shall have a right to a writ of garnishment under the circumstances and in the manner hereinafter provided, to subject any indebtedness due to the defendant by a third person, and any goods, moneys, chattels or effects of the defendant in the hands, possession or control of a third person.
The 1845 garnishment statute subjected various types of tangible personal property to the writ — “goods, moneys, chattels or effects.” Under the statute, the only type of intangible property subject to the writ was “any indebtedness due to the defendant by a third person.” Post relied upon this language to hold that until there had been a final accounting in the probate court, there could be no “debt due from the executor” within the meaning of the statute. The court wrote:
[Wjhile the estate is in process of adjustment, the time not having elapsed for the ascertainment of debts and liabilities, how is it possible to know whether anything will ultimately be available for the payment of legacies, and what can a jury determine?
19 Fla. at 642-43.
Substantially similar language from the 1845 statute was contained in Revised Statutes, section 1666 (1892), General Statutes, section 2130 (1906), Revised General Statutes, section 3431 (1920), Compiled General Laws, section 5284 (1927), section 77.01, Florida Statutes (1941), and section 77.01, Florida Statutes (1965).
In 1967, the legislature changed the wording of section 77.01, to the following:
Every person who has sued to recover a debt or has recovered judgment in any court against any person, natural or corporate, has a right to a writ of garnishment, in the manner hereinafter .provided, to subject any debt due to defendant by a third person, and any tangible or intangible personal property of defendant in the possession or control of a third person.
Ch. 67-254, § 27, at 654-55, Laws of Fla. (emphasis added). It is section 77.01 that creates the right to garnishment. Significantly, the 1967 amendment expanded the scope of garnishment to reach “intangible personal property ... in the possession or control of a third person.” Section 77.01, Florida Statutes (2002) also allows a writ of garnishment to reach such “intangible personal property.”
The change in the wording of the garnishment statute from the 1845 version is important to this case because the mod *551 ern version allows garnishment of forms of intangible personal property beyond an indebtedness “due to defendant by a third person,” the only type of intangible property which garnishment could reach at the time Post was decided. The right of a legatee to inherit from an estate is a form of intangible personal property that now falls within the reach of garnishment under section 77.01.
Another case cited by Gambrill also requires discussion, because, it brings into focus a statute directly applicable to this case. Brown v. Sweat, 149 Fla. 524, 6 So.2d 538 (1942) involved Monte Brown, the administrator of an estate who was also the sole heir of the decedent. The estate had not been closed and no claim had been filed against it. The plaintiff held a judgment against Brown “as an individual and ... caused a levy to be made on property included in the estate.” Id. at 538. The supreme court held that the property of the estate was not subject to execution, applying “the definite language of Section 123 of Chapter 16103, Laws of Florida, Acts of 1933 (The Probate Act), as amended by Section 8 of Chapter 17171, Acts of Florida, Laws of 1935.” Id. That statute provided:
No execution shall issue upon or be levied under any judgment against a decedent or against the personal representative, nor shall any levy be made against any property, real or personal, of the estate of a decedent.
Id. (emphasis in original). The court wrote that the purpose of the statute was
to prevent interference in the administration of these assets. Such interference likely would be as detrimental to the conduct of the affairs of the estate if resulting from levy on a judgment against an heir as from one on a judgment against the decedent or the estate because each would affect the assets and probably impede administration.
Id. at 539. The supreme court acknowledged authority for the “view that the interest of an heir could be reached by execution even if the estate had not been fully administered,” but chose not to follow it in view of section 123. Id.; see also Martinez v. Balbin, 76 So.2d 488, 489-90 (Fla.1954) (citing Brown with approval).
Section 123 was “reproduced verbatim in the subsequently enacted F.S. s. 733.19, F.S.A., Laws, 1945, c. 22783, s. 3.” Martinez, 76 So.2d at 490. Section 733.19 was repealed in 1974. See Ch. 74-106, § 3, at 319, Laws of Fla. It was replaced by the predecessor to the current section 733.706, Florida Statutes (2002). See § 733.706, Fla. Stat. Ann., Historical and Statutory Notes. In pertinent part, section 733.706 now provides:
Except upon approval by the court, no execution or other process shall issue on or be levied against property of the estate. An order approving execution or other process to be levied against property of the estate may be entered only in the estate administration proceeding.
§ 733.706, Fla. Stat. (2002).
Brown does not control this case. It relied on a statute which has since been repealed. Section 733.706 is directly applicable. A post-judgment garnishment proceeding is a form of final process. See Burshan v. Nat’l Union Fire Ins. Co. of Pittsburgh, 805 So.2d 835, 843 (Fla. 4th DCA 2001). Unlike the former section 123’s absolute ban on “any levy ... against any property, real or personal, of the estate of a decedent,” section 733.706 allows execution or other process to “issue on or be levied against property of the estate” if approved by the court handling the estate administration proceeding.
*552 Here, the probate court approved the garnishment proceeding; the court found that garnishment would not interfere with the administration of the estate, thus obviating the concern of Post that a garnishment would cause “great confusion and expense” in the administration of an estate. Complying with section 733.706, the probate judge’s order provides that any payment out of the estate will be controlled by the probate court. Section 733.706 is the type of express statute required by Post and Flanary to change the common law rule “that executors are not subject” to garnishment “on account of legacies payable to a debtor.” Post, 19 Fla. at 639. Finally, the legislature has expanded the scope of section 77.01 to reach intangible personal property such as Gambrill’s interest in her husband’s estate. Changes in the garnishment statute since 1883 have rendered the holding of Post obsolete.
For these reasons, we hold that the circuit court erred in not granting the motion for rehearing and allowing the garnishment to proceed.
We recognize that at the time the trial judge ruled, he was bound by Flanary, with which we certify conflict.[1]
STEVENSON and MAY, JJ., concur.

. Flanary noted that, ”[w]e cannot find any basis for [the judgment creditor's] argument that section 77.01, Florida Statutes (1989) has altered the Post rule.” 591 So.2d at 310. However, as discussed above, the legislature changed the wording of the statute in 1967, twenty-four years before the Flanary decision, expanding the scope of garnishment to reach intangible personal property. Moreover, as we also discussed above, section 733.706 expressly changed the common law rule of Post. Flanaiy failed to discuss this statute, enacted in 1974.