650 So.2d 1028 (1995)
Carmen Cleary De PACANINS, Appellant,
v.
Carlos E. PACANINS, Appellee.
No. 94-176.
District Court of Appeal of Florida, Third District.
February 1, 1995.
Rehearing Denied March 22, 1995.
Sinclair, Louis, Health, Nussbaum & Zavertnik and Paul Louis, Miami, for appellant.
Feder & Fine and Alan Fine, Miami, for appellee.
Before SCHWARTZ, C.J., and GODERICH and GREEN, JJ.
GODERICH, Judge.
The wife, Carmen Cleary de Pacanins, appeals from a non-final order releasing funds, that had been provisionally frozen by a prior order, to the husband. We reverse.
The parties were married to each other twice: first, in 1947 in Maracaibo, Venezuela; and second, in 1951 in Caracas, Venezuela. The parties have five children above the age of majority. Both parties are citizens of Venezuela.
On April 20, 1992, the wife filed an action in Caracas, Venezuela, requesting a declaration of separation. On May 1, 1992, she filed a complaint in Dade County Circuit Court seeking emergency injunctive relief, a declaratory judgment regarding their marital assets, alimony without dissolution, and a writ of sequestration. The wife alleged that prior to 1992, either, jointly, individually, or through holding companies, the parties owned or held bank accounts and certificates of deposits exceeding $9,000,000.00. The wife claimed a direct ownership in half of *1029 those funds and further alleged that the husband was transferring and secreting the majority of them to avoid her ownership interests.
On May 1, 1992, at an ex parte hearing, without notice to the husband, the trial court entered an order granting the wife's motion for an emergency temporary injunction and requiring that the wife post an injunction bond. The injunction froze the husband's $500,000.00 certificate of deposit located at First Union National Bank. On August 3, 1992, the husband moved to dissolve the injunction and to dismiss all causes of action due to lack of subject matter jurisdiction. The husband's motions were denied. However, the husband appealed the entry of the temporary injunction. This court reversed the injunction, and the mandate issued on April 1, 1993. Pacanins v. De Pacanins, 613 So.2d 481 (Fla.3d DCA 1992).
Meanwhile, the wife obtained an ex parte order from the Venezuelan court issuing Letters Rogatory asking the trial court to freeze fifty percent of the certificate of deposit. When the husband attempted to enforce this court's mandate, the wife used the Venezuelan order to persuade the trial court that only half of the funds should be released. On April 13, 1993, the trial court entered an order that dissolved the injunction, released $250,000.00 to the husband, and provisionally froze the remaining $250,000.00 pending a further hearing to determine its disposition. The court allowed the wife to apply her prior injunction bond to the provisional freeze order.
Thereafter, the husband moved the trial court for a determination regarding the disposition of the remaining $250,000.00. On January 24, 1994, the trial court granted the husband's motion and ordered the funds released. The next day, the wife filed her notice of appeal and moved this court for an emergency stay. After the motion was denied, the husband withdrew the funds from the account and the jurisdiction, and the injunction bond was discharged.
The wife contends that the trial court abused its discretion by refusing to enforce the Letters Rogatory issued by the Venezuelan court requesting that $250,000.00 of the husband's funds located in Miami, Florida, be frozen pending final disposition of the parties' domestic case in Venezuela. We agree.
In Cardenas v. Solis, 570 So.2d 996 (Fla.3d DCA 1990), the wife brought a domestic relations suit in Guatemala. The Guatemalan court requested that, pending disposition of the domestic relations suit in Guatemala, the Dade County Circuit Court enter an order freezing half the funds contained in certain of the husband's bank accounts in Miami, Florida. The trial court did so, and the husband appealed the injunction. This court affirmed the trial court's order, and Judge Phillip A. Hubbart cited the following authority and policy considerations:
It is well settled that, as a general rule, only the final judgments of courts of a foreign country are subject to recognition and enforcement in this country, provided certain jurisdictional and due process standards are observed by the foreign court; non-final or interlocutory orders of foreign courts, however, are generally not entitled to such recognition or enforcement.
There has been a distinct trend, however, in recent years in favor of recognizing some limited exceptions to this general rule. American courts are now "more likely to recognize and enforce modifiable foreign judgments (usually those involving family and matrimonial matters), even though foreign interlocutory decrees are still generally not recognized or enforced."
These limited exceptions to the general rule barring the enforceability of interlocutory foreign court orders appear to be based on compelling public policy considerations. There is obviously a strong public policy in favor of enforcing, where practicable, foreign court decrees, final or interlocutory, which (1) seek to support a spouse or a minor child in a domestic relations suit, or (2) protect a creditor in collecting on a valid debt  provided the foreign court observed basic due process standards and otherwise had jurisdiction over the parties. It is felt that spouses and debtors ought not be able to walk away from their foreign *1030 court-imposed obligations by spiriting away their money or assets to the United States.
Cardenas, 570 So.2d at 998-99 (citations omitted) (emphasis added).
In the instant case, the Venezuelan court cited principles of comity and requested the aid of the Dade County Circuit Court in an attempt to maintain the status quo of the parties pending resolution of a domestic relations suit. Apparently, the Venezuelan court feared that without the cooperation of the circuit court by entering and enforcing the requested injunction, the husband could "spirit away" assets to avoid the wife's ownership interests. This is clearly the type of situation where public policy would favor the enforcement of a foreign interlocutory order. Furthermore, the facts below are indistinguishable from those of Cardenas. Therefore, we find that the trial court abused its discretion by releasing the funds in question contrary to the request embodied in the Venezuelan court's Letters Rogatory.
Accordingly, we reverse and remand for further proceedings consistent with this opinion.